FILED
00 FEB 11 PM 4:46
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 1999 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. JULIO A. ALCARAZ and ISMAEL RODRIGUEZ, a.k.a. "Mayo", Defendants. | CR 00-131 <br> I N D I C T M E N T <br> [21 U.S.C. §§ 846, 841(a)(1): Conspiracy to Possess with Intent to Distribute Controlled Substances; 21 U.S.C. § 841(a)(1): Possession With Intent To Distribute Marijuana; 21 U.S.C. § 841(a)(1): Possession With Intent To Distribute Cocaine; 18 U.S.C. § 924(c): Use or Carrying of Firearm During a Drug Trafficking Crime; 18 U.S.C. § 2(a): Aiding and Abetting] |

The Grand Jury charges:

ENTER ON ICMS
FEB 16

JMR:jmr

COUNT ONE

[21 U.S.C. §§ 846, 841(a)(1)]

A. OBJECT OF THE CONSPIRACY

Beginning on a date unknown and continuing until on or about January 27, 2000, in Los Angeles County, within the Central District of California, defendants JULIO A. ALCARAZ, and ISMAEL RODRIGUEZ, and others known and unknown to the Grand Jury, knowingly and intentionally conspired and agreed with each other to possess with intent to distribute controlled substances, including marijuana, a Schedule I controlled substance, and five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

B. MEANS OF THE CONSPIRACY

The foregoing object of the conspiracy was to be accomplished in substance as follows:

1. Defendant JULIO A. ALCARAZ ("ALCARAZ"), who was working as a Long Beach Police Department ("LBPD") patrol officer, and ISMAEL RODRIGUEZ, aka Mayo ("RODRIGUEZ"), would learn about the existence of narcotics located in Los Angeles County.

2. Defendant ALCARAZ would arrange to steal the narcotics while on duty, in uniform, armed with his service weapon, and under circumstances where he could maintain the pretext that he was conducting a law enforcement investigation.

3. When defendant ALCARAZ arranged to steal narcotics being transported by a victim narcotics trafficker, defendant ALCARAZ would search the victim narcotics trafficker's car and come upon the narcotics, which he knew would be there based on information

previously provided to him. Defendant ALCARAZ would then instruct the victim narcotics trafficker to leave the area and thereby avoid being arrested, so that defendant ALCARAZ and his co-conspirators could steal the narcotics.

    4. When defendant ALCARAZ arranged to steal narcotics being stored in a location controlled by a victim narcotics trafficker, defendant ALCARAZ would arrange to make an unauthorized entry into the location where the narcotics were stored, and find and steal the narcotics.

    5. After stealing the narcotics from the victim narcotics traffickers, defendant ALCARAZ, defendant RODRIGUEZ or another co-conspirator would take possession of the narcotics for later distribution.

C.   OVERT ACTS

    In furtherance of the conspiracy and to accomplish the object of the conspiracy, defendants ALCARAZ and RODRIGUEZ, and their co-conspirators, committed various overt acts in Los Angeles County, within the Central District of California and elsewhere, including but not limited to the following:

    THE MARCH 2, 1999 THEFT OF 200 POUNDS OF MARIJUANA

    1. During February 1999, an unindicted co-conspirator agreed to help a narcotics trafficker ("victim narcotics trafficker No. 1") broker the sale of 200 pounds of marijuana ("the marijuana") by finding a buyer for the marijuana.

    2. During February 1999, the same unindicted co-conspirator introduced victim narcotics trafficker No. 1 to defendant RODRIGUEZ and a second unindicted co-conspirator who indicated that they would buy the marijuana for $380 per pound.

3. On March 2, 1999, at approximately 10:30 p.m., victim narcotics trafficker No. 1 took the second unindicted co-conspirator to the Bonanza Restaurant parking lot at 1810 West Willow Street, Long Beach, California, and showed him a light blue Nissan Sentra (the "load car") in which the marijuana was stored.

4. On March 2, 1999, at approximately 10:30 p.m., the second unindicted co-conspirator instructed victim narcotics trafficker No. 1 to follow him in the load car to a location near the Casa Perez restaurant at 2672 Santa Fe Avenue, Long Beach, California (the "Casa Perez parking lot"), where the money to buy the marijuana was allegedly stored.

5. On March 2, 1999, at approximately 10:41 p.m., defendant ALCARAZ commenced his patrol shift in the West Patrol Division of Long Beach, which includes the Casa Perez parking lot.

6. On March 2, 1999, at approximately 11:00 p.m., defendant ALCARAZ called defendant RODRIGUEZ's pager.

7. On March 2, 1999, at approximately 11:19 p.m., defendant ALCARAZ, while armed, in uniform, and driving a marked LBPD patrol car, initiated a traffic stop of victim narcotics trafficker No. 1, who was driving the load car, as it exited the Casa Perez parking lot.

8. On March 2, 1999, at approximately 11:20 p.m., defendant ALCARAZ unholstered a black handgun and ordered victim narcotics trafficker No. 1 out of the load car, and handcuffed and placed him in the back of the patrol car.

9. On March 2, 1999, at approximately 11:20 p.m., defendant ALCARAZ found the marijuana in the trunk of the load car.

10. On March 2, 1999, at approximately 11:20 p.m., defendant

ALCARAZ entered identifying information for victim narcotics trafficker No. 1 into a computer in his patrol car (the "onboard computer").

11. On March 2, 1999, at approximately 11:22 p.m., defendant ALCARAZ told victim narcotics trafficker No. 1 that he could leave on the condition that he would never come back to the area to look for the load car.

12. On March 2, 1999, at approximately 11:29 p.m., defendant ALCARAZ cleared the traffic stop of victim narcotics trafficker No. 1 as "advisal only" on the onboard computer.

13. On March 2, 1999, at approximately 11:30 p.m., defendant ALCARAZ drove victim narcotics trafficker No. 1 in defendant ALCARAZ's marked LBPD patrol car to the Metro Station on Long Beach Boulevard and Willow Street, removed the handcuffs, and told victim narcotics trafficker No. 1 that he (defendant ALCARAZ) did not want to see victim narcotics trafficker No. 1 again.

14. On March 2, 1999, at approximately 11:38 p.m., defendant ALCARAZ again paged defendant RODRIGUEZ.

THE PLANNED THEFT OF A CONTROLLED SUBSTANCE ON JANUARY 14 AND 21, 2000

15. On January 14, 2000, at approximately 7:11 p.m., defendant RODRIGUEZ told defendant ALCARAZ that he (defendant RODRIGUEZ) had met with a "friend" (victim narcotics trafficker No. 2), and had seen a controlled substance (the exact nature of which he did not specify), which he described as "good."

16. On January 14, 2000, at approximately 7:32 p.m., defendant ALCARAZ paged defendant RODRIGUEZ and entered in his (defendant ALCARAZ's) cellular telephone number followed by the code "1717".

17. On January 14, 2000, at approximately 7:34 p.m., defendant RODRIGUEZ called defendant ALCARAZ and they discussed the following:

    a. Defendant RODRIGUEZ asked defendant ALCARAZ if he wanted to do the narcotics transaction right away and defendant ALCARAZ said he did.

    b. Defendant ALCARAZ told defendant RODRIGUEZ that he (defendant ALCARAZ) was on duty until 2:00 a.m.

    c. Defendant RODRIGUEZ told defendant ALCARAZ that he (defendant RODRIGUEZ) had already checked the controlled substance and everything was good.

    d. Defendant RODRIGUEZ said he could sell each unit of the controlled substance for $7,500 which would result in each of the co-conspirators getting $7,000.

    e. Defendant RODRIGUEZ told defendant ALCARAZ that he would go in his Expedition and victim narcotics trafficker No. 2 would follow him in a second car.

    f. Defendant RODRIGUEZ told defendant ALCARAZ that the theft would occur in the same manner and place as the prior thefts had occurred and that the car in which the narcotics had been stored would remain there and defendant ALCARAZ could impound it.

    g. Defendant RODRIGUEZ told defendant ALCARAZ that victim narcotics trafficker No. 2 would not be carrying a driver's license or other identification.

18. On January 14, 2000, at approximately 8:51 p.m., defendant RODRIGUEZ told defendant ALCARAZ that they could not do the theft that day and that they were waiting on a call.

19. On January 21, 2000, at approximately 4:57 p.m., defendant RODRIGUEZ called defendant ALCARAZ and they discussed the following:

     a. Defendant RODRIGUEZ said that he had been trying to reach defendant ALCARAZ because the deal was on again but because defendant ALCARAZ had not returned the pages, he (defendant RODRIGUEZ) had to call the deal off.

b. Defendant RODRIGUEZ confirmed that defendant ALCARAZ was on duty the following Monday and told defendant ALCARAZ that they would split the proceeds between three people.

THE PLANNED THEFT OF TEN KILOGRAMS OF COCAINE ON JANUARY 15, 21, AND 25, 2000

20. On January 15, 2000, at approximately 11:36 a.m., defendant RODRIGUEZ called defendant ALCARAZ and they discussed the following:

a. Defendant ALCARAZ told defendant RODRIGUEZ that he (defendant ALCARAZ) believed that two males (victim narcotics traffickers No. 3 and 4) who lived near him had brought in "ten kilos of white ones" and also had money in the house.

b. Defendant ALCARAZ told defendant RODRIGUEZ that he believed that the house was being rented simply to store the cocaine and that it was hidden in mattresses in the garage.

c. Defendant RODRIGUEZ asked defendant ALCARAZ if he wanted defendant RODRIGUEZ to come over, and defendant ALCARAZ declined saying he wanted to investigate a little more.

d. Defendant RODRIGUEZ confirmed with defendant ALCARAZ that he was working Monday through Thursday that week.

21. On January 21, 2000, at approximately 4:57 p.m., defendant RODRIGUEZ called defendant ALCARAZ and they discussed the following:

a. Defendant RODRIGUEZ asked defendant ALCARAZ what was going on with the "thing" across the street.

      b. Defendant ALCARAZ told defendant RODRIGUEZ that he (defendant ALCARAZ) intended on going over when he was "working" and knocking on the door to see if anyone was home, and if not, he would go inside in his "uniform" and search the whole house.

c. Defendant ALCARAZ promised to tell defendant RODRIGUEZ when he was going over to the house so they could go over together.

22. On January 25, 2000, at approximately 3:33 p.m., defendant ALCARAZ called defendant RODRIGUEZ and they discussed the following:

a. Defendant RODRIGUEZ asked defendant ALCARAZ what the story with the house was.

b. Defendant ALCARAZ said he had not been over there yet and that he wanted to wait until he was sure victim narcotics traffickers 3 and 4 were not home.

c. Defendant ALCARAZ promised to page defendant RODRIGUEZ when he (defendant ALCARAZ) went over.

<u>THE JANUARY 26 AND 27, 2000, THEFT OF SIX KILOGRAMS OF COCAINE FROM AN UNDERCOVER BUREAU OF NARCOTICS ENFORCEMENT AGENT</u>

23. On November 30, 1999, at approximately 11:53 p.m., defendant ALCARAZ entered the license plate number 2MUE999 into a computer in his LBPD patrol car at the request of a witness cooperating with the government (CW #1) who explained to defendant ALCARAZ that the individual with the above noted license plate had stolen either money or narcotics from him and six kilogram of cocaine from another individual.

24. On January 25, 2000, defendant ALCARAZ agreed with CW #1 that defendant ALCARAZ would steal cocaine from an individual CW #1 told him was involved in the above thefts. Defendant ALCARAZ told

CW #1 that he (defendant ALCARAZ) wanted the theft to occur while he was on duty.

25. On January 26, 2000, defendant ALCARAZ suggested that the drug deal should be arranged to take place at the Ralphs parking lot located on Willow Street near Santa Fe (the "Ralphs parking lot").

26. On January 26, 2000, at approximately 10:47 p.m., defendant ALCARAZ commenced his patrol shift for the LBPD in uniform, armed, and driving a marked LBPD patrol car.

27. On January 26, 2000, at approximately 11:28 p.m., defendant ALCARAZ agreed with CW #1 that defendant ALCARAZ would go to the Weber's Bakery parking lot at 3636 Santa Fe Avenue, Long Beach, California ("Weber's parking lot") where he understood the cocaine to be located.

28. On January 26, 2000, at approximately 11:28 p.m., defendant ALCARAZ entered in the onboard computer of his patrol car that he was involved in an investigation at the intersection of Santa Fe Avenue and Lincoln Boulevard in Long Beach, California.

29. On January 26, 2000, at approximately 11:30 p.m., defendant ALCARAZ entered the Weber's parking lot and made contact with an undercover Bureau of Narcotics Enforcement agent posing as a narcotics trafficker ("victim narcotics trafficker No. 5") who was driving a white Cherokee Jeep (the "Jeep") and wearing a cowboy hat.

30. On January 26, 2000, at approximately 11:31 p.m., defendant ALCARAZ unholstered his service weapon and instructed victim narcotics trafficker No. 5 to walk toward the patrol car with his hands over his head.

31. On January 26, 2000, at approximately 11:33 p.m.,

defendant ALCARAZ took the car keys to the Jeep from victim narcotics trafficker No. 5.

32. On January 26, 2000, at approximately 11:34 p.m., defendant ALCARAZ opened the Jeep's trunk, looked in the bag where the cocaine was stored (the "bag of cocaine"), closed the bag, removed it, and placed it in the back of his patrol car.

33. On January 26, 2000, at approximately 11:38 p.m., defendant ALCARAZ told victim narcotics trafficker No. 5 that he would give him a chance and allow him to leave (instead of arresting him).

34. On January 26, 2000, at approximately 11:44 p.m., defendant ALCARAZ called defendant RODRIGUEZ's pager and entered his (defendant ALCARAZ's) cellular telephone number followed by the code "1717" and then "911".

35. On January 26, 2000, at approximately 11:48 p.m., defendant RODRIGUEZ called defendant ALCARAZ and was told by defendant ALCARAZ that he had six kilograms of cocaine.

36. On January 27, 2000, at approximately 12:02 a.m., defendant RODRIGUEZ again called defendant ALCARAZ and they agreed to meet behind a donut shop located at 3657 Santa Fe Avenue, Long Beach, California (the "donut shop parking lot").

37. On January 27, 2000, at approximately 12:03 a.m., defendant ALCARAZ met defendant RODRIGUEZ at the donut shop parking lot and handed him the bag of cocaine.

38. On January 27, 2000, at approximately 12:04 a.m., defendant RODRIGUEZ placed the bag of cocaine in a white Ford Expedition, California license plate 4DZT-927 (the "Expedition") and drove out of the donut shop parking lot.

39. On January 27, 2000, at approximately 12:07 a.m., defendant ALCARAZ in his patrol car escorted the Expedition from the donut shop parking lot to Alondra Boulevard and the 710 Freeway in Compton, California.

40. On January 27, 2000, at approximately 12:15 a.m., defendant RODRIGUEZ failed to comply with the instruction of a law enforcement officer that he (defendant RODRIGUEZ) get out of the Expedition, and thereafter fled in the Expedition at a high rate of speed.

41. On January 27, 2000, defendant RODRIGUEZ caused the bag of cocaine to be thrown out of the Expedition during the course of the pursuit at the intersection of Rosecrans and Butler Avenues in the City of Compton, California.

COUNT TWO

[21 U.S.C. § 841(a)(1); 18 U.S.C. § 2]

On or about March 2, 1999, in Los Angeles County, within the Central District of California, defendants JULIO A. ALCARAZ and ISMAEL RODIGUEZ, aka Mayo, knowingly and intentionally possessed with intent to distribute, and aided and abetted each other in possessing with the intent to distribute, approximately 200 pounds of marijuana, a Schedule I controlled substance.

COUNT THREE

[18 U.S.C. § 924(c)]

On or about March 2, 1999, in Los Angeles County, within the Central District of California, defendants JULIO A. ALCARAZ and ISMAEL RODRIGUEZ, aka Mayo, used and carried a firearm, namely, a handgun, during and in relation to, and possessed that firearm in furtherance of, a drug trafficking crime, namely, possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) as alleged in Count Two of this indictment, and in so doing, brandished that firearm.

COUNT FOUR

[21 U.S.C. § 841(a)(1)]

Between on or about January 26, 2000 and on or about January 27, 2000, in Los Angeles County, within the Central District of California, defendants JULIO A. ALCARAZ and ISMAEL RODRIGUEZ, aka Mayo, knowingly and intentionally possessed with intent to distribute more than five kilograms, that is, approximately six kilograms, of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FIVE

[18 U.S.C. § 924(c)]

Between or about January 26, 2000 and January 27, 2000, in Los Angeles County, within the Central District of California, defendants JULIO A. ALCARAZ and ISMAEL RODRIGUEZ, aka Mayo, used and carried a firearm, namely, a Smith and Wesson .40 caliber handgun, during and in relation to, and possessed that firearm in furtherance of, a drug trafficking crime, namely, possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) as alleged in Count Four of this indictment, and in so doing, brandished that firearm.

A TRUE BILL

_________________________
Foreperson

ALEJANDRO N. MAYORKAS
United States Attorney

GEORGE S. CARDONA
Assistant United States Attorney
Chief, Criminal Division

KIMBERLY A. DUNNE
Assistant United States Attorney
Chief, Public Corruption and Government Fraud Section